■ In the Matter of SAMUEL, an Infant.—Order affirmed with costs. Memorandum: Family Court properly dismissed the adoption petition and restored custody of the child to the natural mother. Family Court found, and we agree, that the natural mother changed her mind about placing her child for adoption, and that she communicated her change of mind to her attorney who, in turn, communicated it to the adoptive parents before the extrajudicial consent took effect and before physical custody of the child was transferred to the adoptive parents. The court found that the natural mother timely rescinded her attorney's authority to file the extrajudicial consent and to place the child.

Placement of the child was unauthorized because the birth mother's attorney violated Social Services Law § 374 (6) by providing legal services to both the birth mother and the adoptive parents, thus depriving the birth mother of her right to independent legal counsel. Additionally, a valid "placing out" of a child in a private adoption is governed by strict statutory provisions. One of those is a statutory limitation on persons who may place out a child (see, Social Services Law § 371 [12]). The only persons that can place a child are an authorized agency as defined in Social Services Law § 371 (10), a natural parent, a legal guardian, or a relative within the second degree of consanguinity (Social Services Law § 374 [1], [2]). Attorneys are not included among the persons that can place a child. There is an exception, of course, for the attorney for the birth mother when acting "upon her express request

and authorization, and * * * thus acting as her agent for this purpose" *(Matter of Baby Girl B.,* 144 Misc 2d 583, 587, *affd for reasons stated* 161 AD2d 1201). The unavoidable corollary to that rule is that the birth mother's attorney is not among those empowered to place the child for adoption where the attorney lacks the mother's authority to place the child.

Here, the attorney not only lacked such authority, her transfer of the child was in flagrant disregard of the mother's instructions. It is uncontroverted that, before the child was placed, the mother instructed the attorney that she did not want to go through with the adoption and wanted to keep the baby. Nevertheless, the attorney obtained the discharge of the child from the hospital and turned him over to the adoptive parents in order to carry out their wishes. The placement of the child was thus illegal and custody of the child was properly restored to the natural mother.

All concur, except Pine, J., who dissents and votes to reverse, in the following memorandum.

Pine, J. (dissenting). I respectfully dissent. The Family Court order on appeal gave full force and effect to the birth mother's revocation of her December 11, 1989 extrajudicial consent without a hearing and directed return of the baby to her. The baby was born on December 9th; the consent was signed and the birth mother was discharged from the hospital on December 11th. Respondents were advised before obtaining physical custody of the child on December 12th at the hospital that the birth mother had changed her mind and was revoking her consent. The birth mother filed a notice to revoke her consent with the Monroe County Surrogate's and Family Courts on January 9, 1990. The next day respondents filed an adoption petition in Family Court and two weeks later they filed their notice of intent to oppose revocation. The birth mother then sought a writ of habeas corpus for the child's return.

Family Court summarily dismissed the adoption petition on the grounds that respondents failed to follow the statutes with respect to placement of the child (Social Services Law § 374 [2]) and that they were not precertified as adoptive parents as required by Domestic Relations Law § 115 (1) (b). The court also found that the attorney who notarized the birth mother's consent "appears to have violated Social Services Law § 374 (6) by 'providing legal services to both the natural parent and adoptive parents' " so that the birth mother did not have independent legal counsel.

In affirming the order, the majority of this court implicitly holds that the birth mother is entitled to automatic return of her child because she revoked her consent before the adoptive parents obtained custody of the child and she revoked the authority of the attorney to make the transfer. The majority also states that placement was improper because dual representation of the birth mother and the adoptive parents by the same attorney violated Social Services Law § 374 (6).

I submit that the majority fails to distinguish between the consent to adoption executed on December 11th and the transfer carried out on December 12th. I agree with the majority that authority to transfer the child to the adoptive parents was revoked by the birth mother, so that the placement by the attorney was unauthorized (see, Social Services Law § 371 [12]; *Matter of Baby Girl B.,* 144 Misc 2d 583, 587, *affd for reasons stated* 161 AD2d 1201). However, unless the consent was obtained by fraud, duress or coercion, claims not made in this record, timely revocation of a consent triggers a best interests hearing (Domestic Relations Law § 115-b [7]). There is no statutory authority for giving the birth mother some period of time to revoke a voluntary consent before such a hearing is required.

Indeed, the Legislature amended Domestic Relations Law § 115-b in 1986 to measure the period within which a birth parent may revoke consent from the date of execution of the consent (Domestic Relations Law § 115-b [3] [a]), rather than from the commencement of adoption proceedings, as had been required by the prior language of Domestic Relations Law § 115-b (1) (d) (i) *(Matter of Sarah K.,* 66 NY2d 223, 234-235, *cert denied sub nom. Kosher v Stamatis,* 475 US 1108; *see,* Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C115-b:3, at 504-507). The outcome of such a hearing can be return of the child to the birth parent, adoption by the adoptive parents, placement of the child with an authorized agency with or without authority to consent to adoption, or other disposition (Domestic Relations Law § 115-b [6] [d] [ii]). The record shows that the transfer was made after the attorney was advised informally by a Family Court Judge, in apparent reliance on that statute, that her alternatives were to deliver custody to the proposed adoptive parents if they still wanted the child or to deliver the child to foster care pending further action.

Any impropriety with respect to events on December 12th would not permit summary return of the child to the birth mother if the consent she had signed on December 11th was

voluntary. Such impropriety in the transfer can be addressed by penal or professional sanctions against the attorney. A best interests hearing is required (Domestic Relations Law § 115-b [6] [d]). (Appeal from order of Monroe County Family Court, Bonadio, J.—adoption.) Present—Dillon, P. J., Denman, Pine, Lawton and Davis, JJ.